**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| REGGIE BOYD,<br><br>            Plaintiff,<br>v.<br><br>OFFICER LARREGUI, OFFICER TORRES, OFFICER WILSON, SGT. SEELY, ARMANDO PEREZ, AND CITY OF BRIDGEPORT,<br><br>            Defendants. | Civil Action No.<br>3:19-cv-579(CSH)<br><br><br>SEPTEMBER 30, 2020 |

**RULING ON DEFENDANTS' MOTION TO DISMISS [Doc. 13]**

**Haight, Senior District Judge:**

## I. INTRODUCTION

Plaintiff Reggie Boyd commenced this action against the City of Bridgeport, Chief Armando Perez, and individual police officers in Bridgeport's Police Department pursuant to 42 U.S.C. § 1983. In his Complaint, Plaintiff sues Officers Larregui, Torres, Wilson, and Seely in their individual capacities for applying "excessive, unreasonable, and unlawful force" when they took him into custody on April 18, 2016. Doc. 1 ("Complaint"), ¶ 29. Specifically, Plaintiff alleges, *inter alia*, that "without warning" and despite the fact that he was not resisting, Officer Larregui fired electronic Taser probes, "striking [him] in the back" and "embedding razor sharp barbs into Plaintiff's flesh." *Id.* ¶¶ 13, 25. Moreover, after this Taser shock, Officers Wilson, Torres and/or Larregui allegedly tackled Plaintiff, pinning him to the ground, and handcuffed him by twisting his wrists unnecessarily and unreasonably. *Id.* ¶¶ 14-16. Thereafter, these officers allegedly rolled Plaintiff onto his back with

1

his handcuffed arms underneath him. *Id.* ¶ 17. They then pressed their weight upon him, thereby "fracturing Plaintiff's wrist." *Id.* Sergeant Seely "came upon the scene at some point." *Id.* ¶ 20. Plaintiff allegedly requested that the police officers "loosen the handcuffs, double-cuff or frontcuff him," but they refused. *Id.* ¶ 21. As a result of his injuries, Plaintiff was transported by ambulance to Bridgeport Hospital for medical care. *Id.* ¶ 22. He was thereafter detained in Bridgeport Police headquarters for several hours. *Id.* ¶ 23.

Plaintiff alleges that Officers Larregui, Wilson, Torres, and Seely each violated his right to be free from unreasonable force and seizures under the Fourth Amendment. *Id.* ¶ 30. He also asserts that the City of Bridgeport (herein also "the City") and Police Chief Armando Perez failed to adequately train defendant Larregui in the use of electronic control weapons, including the deployment of Tasers. *Id.* ¶¶ 31-34. This failure allegedly reflected the "deliberate indifference" of these two defendants to Plaintiff's constitutional rights. *Id.* ¶¶ 33, 34.

As a result of his injuries – including "abrasions, contusions, a fracture[d] wrist, emotional distress, . . . medical expenses, and temporary and permanent injuries" – Plaintiff prays for "nominal damages, compensatory damages, punitive damages, attorney's fees and costs and any other relief in law or equity which may appertain." *Id.* ¶ 26, and p. 7.

Pending before the Court is the motion by Chief Perez and the City of Bridgeport (herein "Defendants") to dismiss the 42 U.S.C. § 1983 claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." *See* Doc. 13. In particular, these two Defendants request that the Court dismiss Boyd's claims that they failed to train the individual officer defendants in the use of electronic control weapons, including Tasers, because the claims have not been plausibly pled. Doc. 14 (Defendants' "Memorandum in Support"), at 1.

Defendant City of Bridgeport also requests that Plaintiff's claim for punitive damages be dismissed against it because municipalities are not subject to punitive damages under 42 U.S.C. § 1983. *Id.*

Plaintiff, who is represented by counsel, filed no opposition to the Defendants' motion to dismiss within the requisite 21-day filing period. Under Local Civil Rule 7, "all opposition memoranda shall be filed within twenty-one (21) days of the filing of the motion" and "[f]ailure to submit a memorandum in opposition to a motion may be deemed sufficient cause to grant the motion, except where the pleadings provide sufficient grounds to deny the motion." D. Conn. L. Civ. R. 7(a)(2). In resolving Defendants' motion to dismiss, the Court will herein analyze whether the Complaint states plausible claims against Perez and the City – *i.e.*, whether there are "sufficient grounds" to grant or deny the motion. *Id.*

## II. DISCUSSION

### A. Standard for Dismissal - Fed. R. Civ. P. 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of the complaint if that pleading fails "to state a claim upon which relief may be granted." In order to survive such a motion, the complaint must comply with the standard set forth in the United States Supreme Court's seminal holding in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Under *Iqbal*, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S 544, 570 (2007)).[1] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

---

[1] The Second Circuit has consistently adhered to the United States Supreme Court's plausibility standard set forth in *Iqbal*. *See, e.g.*, *Vaughn v. Phoenix House New York Inc.*, 957 F.3d 141, 145 (2d Cir. 2020); *Lynch v. City of New York*, 952 F.3d 67, 74-75 (2d Cir. 2020)*, Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 462 (2d Cir. 2019); *Kelleher v. Fred A. Cook, Inc.*, 939 F.3d 465, 467 (2d Cir. 2019); *Kolbasyuk v. Capital Mgmt. Servs., LP,* 918 F.3d 236, 239 (2d Cir. 2019).

the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint must provide "more than the unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

In determining whether the plaintiff has met this standard, the court must accept the allegations in the complaint as true, draw all reasonable inferences and view all facts in the light most favorable to the non-moving party. *Trustees of Upstate New York Engineers Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 2279, 198 L. Ed. 2d 703 (2017). "[W]hether a complaint states a plausible claim for relief will [ultimately] . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 663-64. When "well-pleaded factual allegations" are present, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.  Factual disputes do not factor into a plausibility analysis under *Iqbal* and its progeny.

"Although a court must accept as true all the factual allegations in the complaint, that requirement is 'inapplicable to legal conclusions.'" *Vaughn v. Phoenix House New York Inc.*, 957 F.3d 141, 145 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678).  *See also LaMagna v. Brown*, 474 F. App'x 788, 789 (2d Cir. 2012); *Amaker v. New York State Dept. of Corr. Servs.*, 435 F. App'x 52, 54 (2d Cir. 2011).  Accordingly, the Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (quoting *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (internal quotation marks omitted)). "Threadbare recitals of the elements of a cause of action, supported by mere

4

conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). In sum, "'where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,' . . . dismissal is appropriate." *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).[2]

In deciding a motion to dismiss under Rule 12(b)(6), "the court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020). "The assessment of whether a complaint's factual allegations plausibly give rise to an entitlement to relief 'does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal' conduct." *Lynch*, 952 F.3d at 75 (citing and quoting *Twombly*, 550 U.S. at 556).

## B. Motion to Dismiss

### *1. Failure to Train Claim against the City of Bridgeport and Police Chief Perez*

Defendants City of Bridgeport and Police Chief Armando Perez first request dismissal of Plaintiff's claims that they failed to train the officer defendants, and particularly Officer Larregui, in the use of electronic control weapons, including the Taser. Doc. 14, at 3. They assert that these claims are not plausible as pled because the allegations contained therein are "inconsistent" and

---

[2] In general, in Ruling on a 12(b)(6) motion, the Court considers the pleadings and their attached exhibits. "[W]hen matters outside the pleadings are presented in response to a 12(b)(6) motion," a district court must either "exclude the additional material and decide the motion on the complaint alone" or "convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material." *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) (quoting *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988)).

contradictory. *Id.*

In support of their argument, Defendants quote the following paragraphs of the Complaint:

31. The Defendant City of Bridgeport and Defendant Chief Perez authorized and continue to authorize BPD officers, including Defendant LARREGUI, to carry and deploy electronic control weapons such as a Taser.

32. The need to train officers, including Defendant LARREGUI, in the constitutional limitations regarding the use of electronic control weapons, like the training in the use of deadly force, is obvious; and the failure to do so amounts to deliberate indifference.

33. Both the Defendant City of Bridgeport and Defendant Perez had a duty to ensure that its police officers, including Defendant LARREGUI, were adequately trained in the use of electronic control weapons, including the Taser, and that such training comported with Bridgeport Police General Orders concerning the deployment of Tasers.

34. As such, this failure-to-train reflects deliberate indifference to the constitutional rights of citizens, including Plaintiff BOYD.

Doc. 1, ¶¶ 31-34. Defendants then contrast these allegations with those set forth in paragraph 28 of the Complaint:

28. The use of a Taser in these circumstances by Defendant LARREGUI against the Plaintiff was in violation of the General Orders of the City of Bridgeport Police Department *and inconsistent with the training afforded Defendant Larregui by* [the] *City of Bridgeport Police Department.*

Doc. 14, at 2 (quoting Doc. 1, ¶ 28 ) (emphasis in Defendants' memorandum).

Defendants assert that although "Boyd has alleged § 1983 liability against both Chief Perez and the City of Bridgeport for failure to train Officer Larregui in the proper use of the Taser[,] . . . in the same complaint he asserts that Officer Larregui's use of a Taser under the circumstances was 'inconsistent with the training afforded [him] by the City of Bridgeport Police Department.'" Doc. 14, at 3. They conclude that this inconsistency of the facts pled "undermine[s] the plausibility of the

§ 1983 claims made in the pleadings." *Id.* Specifically, "[i]f Officer Larregui's conduct was inconsistent with the training received by the Police Department, there is no failure to train by either the City or by Chief Perez." *Id.*

### a. Inconsistent Pleadings

With respect to inconsistent pleadings, "[i]t is black letter law that a complaint *may* plead in the alternative." *Astroworks, Inc. v. Astroexhibit, Inc.*, 257 F. Supp. 2d 609, 616 (S.D.N.Y.2003) (emphasis in original). *See also* Fed. R. Civ. P. 8(d)(2)-(3)). A plaintiff may not, however, be able to recover on both theories if the allegations conflict. *Walker v. Carter*, No. 1:12-CV-05384 (ALC), 2014 WL 4363956, at *2 (S.D.N.Y. Sept. 3, 2014) (citation omitted).

In particular, under Rule 8(d)(2), "A party may set out 2 or more statements of a claim . . . alternatively or hypothetically, either in a single count or . . . in separate ones." Fed. R. Civ. P. 8(d)(2). Moreover, "[i]f a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." *Id.* Furthermore, under Rule 8(d)(3), Fed. R. Civ. P., captioned "Inconsistent Claims or Defenses," a party "may state as many separate claims . . . as it has, regardless of consistency." *Id.*(d)(3).

Rule 8(d) "allows a plaintiff to plead inconsistently, and the inconsistency may lie with the statement of the facts or the legal theories adopted." *In re McCann, Inc.*, 318 B.R. 276, 288 (Bankr. S.D.N.Y. 2004) (quoting *Henry v. Daytop Village, Inc.*, 42 F.3d 89, 94 (2d Cir.1994) and citing 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE: CIVIL § 1283 (3d ed. 2004)). Therefore, "a factual allegation in one claim should not be construed as an admission against another alternative or inconsistent claim." *McCann*, 318 B.R. at 288 (citing *Henry*, 42 F.3d at 95). This is especially true "at the early states of litigation," so that "a party's

7

pleading will not be treated as an admission precluding another, inconsistent pleading." *Id.* at 289 (quoting *Rodriguez–Suris v. Montesinos*, 123 F.3d 10, 20 (1st Cir.1997)). This principle extends to inconsistent facts as well as legal theories. *Id.* at 288.

Nonetheless, a party may not plead inconsistent facts within the same claim. Rule 8(d) does not give plaintiffs "license to plead inconsistent *assertions of facts* within the allegations that serve as the factual predicates for an independent, unitary claim." *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 407 (S.D.N.Y. 2001) (emphasis in original).[3] "Internally conflicting factual assertions that constitute integral components of a claim must be distinguished from a permissible alternative statement embodying a theory of a whole sufficient claim." *Id.*

In the case at bar, the allegations in the "failure to train" claims against the City and Police Chief Perez facially conflict with the allegations that Defendant Larregui fired the Taser in violation of the City's "General Orders" and "the training afforded [him] by [the] City of Bridgeport Police Department." Doc. 1, ¶ 28. Defendants are correct that if they enacted General Orders and provided training to Officer Larregui regarding firing a Taser, they logically could not have completely failed to train him pursuant to these allegations. However, the claim that Officer Larregui failed to comply with training provided him may be viewed as separate from the claim that Perez and the City of Bridgeport failed to train Larregui. Clearly, the facts in support of the claims regarding compliance and training are inconsistent so that if Plaintiff recovers under one theory, he may not be able to recover under the other. For example, if Larregui failed to comply with the City's training program regarding the use of Tasers, it is unlikely Plaintiff can recover based on a theory that the City and

---

[3] The Court in *In re Livent, Inc.* quotes the language of former Rule 8(e)(2), which is currently set forth in Rule 8(d)(3), permitting "separate claims . . . regardless of consistency."

Perez failed to provide such training.

However, when viewed as alternative claims at the initial pleading stage on a motion to dismiss, Rule 8(d)(2) allows the Court "to construe separate allegations in a complaint as alternative theories, at least when drawing all inferences in favor of the nonmoving party as [the Court must do on] motions to dismiss . . . ." *Adler v. Pataki*, 185 F.3d 35, 41 (2d Cir.1999). Therefore, "[a]s long as each claim is legally sufficient standing alone, the facts alleged in one claim will not be treated as binding admissions to defeat an alternative claim that does not incorporate the inconsistent allegations." *McCann*, 318 B.R. at 289.

### b. Legal Sufficiency of "Failure to Train" Claim

In the case at bar, as long as Plaintiff's "failure to train" claims against the City and Perez are legally sufficient – apart from his claim that Larregui acted against the Police Department's orders and training in firing the Taser – then the "failure to train" claims may proceed. Turning to whether the "failure to train" claims are legally sufficient, Defendants point out that a municipality, such as the City, may not be held liable under § 1983 simply on the basis of *respondeat superior*. Doc. 14, at 3  (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694-95 (1978)). Municipalities are responsible for their own legal acts and not vicariously liable for the civil rights violations committed by their employees.  *Id.* at 3-5 (citing *Monell*, 436 U.S. at 691).

Moreover, as to the City's potential liability for its employees' actions,  the Second Circuit has stated that "[i]n order to prevail on a claim against a municipality under section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31,

36 (2d Cir. 2008) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690–91 (1978)). Moreover, "[t]he fifth element—the 'official policy' element—can only be satisfied where a plaintiff proves that a 'municipal policy of some nature caused a constitutional tort.'" *Id.* (citing *Monell*, 436 U.S. at 691). "In other words, a municipality may not be found liable simply because one of its employees committed a tort." *Id.* (quoting *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 405 (1997)).

In the present case, in order to sustain a § 1983 claim for municipal liability, Plaintiff must show that he suffered a constitutional violation, and that the violation resulted from an identified municipal policy or custom. *See Monell*, 436 U.S. at 694 ("[I]t is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983.").

Furthermore, in order to establish a municipal policy or custom, one must show: (1) a formal policy officially promulgated by the municipality, *Monell,* 436 U.S. at 690; (2) an action taken by the official responsible for establishing policy regarding a particular issue*, Pembaur v. City of Cincinnati,* 475 U.S. 469, 483 (1986); (3) unlawful practices by subordinate officials that are "so permanent and well settled as to constitute a 'custom or usage' with the force of law," *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1985) (citation omitted); or (4) a failure to train or to supervise that "amounts to deliberate indifference to the rights of persons with whom the police come into contact," *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). *See also Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 226 (2d Cir. 2004) ("A policy, custom, or practice may also be inferred where 'the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction.'") (quoting *Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir.1996), *cert. denied*, 520 U.S. 1155 (1997)).

Plaintiff has chosen to draft his failure to train claim as a claim for "deliberate indifference" to his constitutional rights. Doc. 1, ¶¶ 32-34. He explicitly alleges that the "failure-to-train" by the City of Bridgeport and Defendant Perez "reflects deliberate indifference to the constitutional rights of citizens, including [himself]." *Id.* ¶ 34. As the Supreme Court stated in *Canton*, "[i]n resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform." 489 U.S. at 390. Moreover, "[i]n limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

### 1. Failure to Train as to Chief Perez

With respect to his claim that Chief Perez failed to adequately train Officer Larregui, Plaintiff makes three allegations:

32. The need to train officers, including Defendant LARREGUI, in the constitutional limitations regarding the use of electronic control weapons, like the training in the use of deadly force, is obvious; and the failure to do so amounts to deliberate indifference.

33. Both the Defendant City of Bridgeport and Defendant Perez had a duty to ensure that its police officers, including Defendant LARREGUI, were adequately trained in the use of electronic control weapons, including the Taser, and that such training comported with Bridgeport Police General Orders concerning the deployment of Tasers.

34. As such, this failure-to-train reflects deliberate indifference to the constitutional rights of citizens, including Plaintiff BOYD.

Doc. 1, ¶¶ 32-34.

Inadequate training "may serve as the basis of § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."

11

*City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by [the Supreme Court's] prior cases—can a city be liable for such a failure under § 1983." *Id.* at 389.

To allege failure to train under § 1983, a plaintiff must plead facts that give rise to a plausible inference that: (1) "[the] policymaker knows to a moral certainty that her employees will confront a given situation;" (2) "the situation . . . presents the employee with a difficult choice of the sort that training or supervision will make less difficult or . . . there is a history of employees mishandling the situation;" and (3) "the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *Walker v. City of New York*, 974 F.2d 293, 297-98 (2d Cir. 1992) (citation and internal quotation marks omitted). The plaintiff "must also point to a specific deficiency within the training program and cannot allege a general lack of training or that more or better training would have caused the situation to be avoided." *Pal v. Cipolla*, No. 3:18-CV-616 (MPS), 2019 WL 2930008, at *7 (D. Conn. July 8, 2019) (citing *Canton*, 489 U.S. at 388); *Venghaus v. City of Hartford,* No. 3:06-CV-01452 (DJS), 2012 WL 1050014, at *12 (D. Conn. Mar. 27, 2012) ("To simply state that a training program is deficient is insufficient as a matter of law when unsupported by evidence").

Moreover, there is no *respondeat superior* liability in § 1983 cases. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Based on the rules our precedents establish, . . . Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior.*"). Therefore, to state a claim of failure to train against an official, a plaintiff must plausibly allege the defendant's personal involvement in the alleged constitutional violation. *See Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir. 1995) ("It is well settled in this Circuit that

12

personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (citation and internal quotation marks omitted); *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir.1991)).

To demonstrate a supervisor's personal involvement, a plaintiff must allege that: "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference . . . by failing to act on information indicating that unconstitutional acts were occurring." *Colon*, 58 F.3d at 873.

In the case at bar, Plaintiff fails to allege facts to show that Perez participated directly in a constitutional violation. There are also no facts in the Complaint to demonstrate that he was informed of such a violation and failed to remedy it, created a policy or custom giving rise to an unconstitutional practice of using Tasers, was grossly negligent in supervising Larregui, or failed to act on information that unconstitutional acts were occurring.

Furthermore, Plaintiff makes no specific allegations about deficiencies in the City's training program. Rather, he generally alleges that Officer Larregui was not trained, asserting by implication that his behavior when employing a Taser evidences a lack of training. However, such allegations have been repeatedly held insufficient to state a plausible failure to train claim. *See, e.g., Pal*, 2019

WL 2930008, at *7 (dismissing plaintiff's failure to train claim against Wilton police officers because plaintiff must "point to a specific deficiency within the training program and cannot allege a general lack of training or that more or better training would have caused the situation to be avoided"); *Adams v. City of New Haven*, No. 3:14-CV-00778 (JAM), 2015 WL 1566177, at *4 (D. Conn. Apr. 8, 2015) ("Plaintiff has made no more than a general allegation that defendants failed to adequately train and instruct [police] officers regarding the Fourth and Fourteenth Amendment rights of persons."); *Marte v. New York City Police Dep't,* No. 10 CIV. 3706 PKC, 2010 WL 4176696, at *3 (S.D.N.Y. Oct. 12, 2010) ("[T]he plaintiffs have not pled facts suggesting that the constitutional deprivations they suffered were the consequence of training or supervisory deficiencies. Plaintiffs do not identify procedural manuals or training guides, nor do they highlight relevant particular aspects of police training or supervision."). Put simply, "[t]he bare fact that [an official] occupies a high position in the [organization's] hierarchy is insufficient to sustain [plaintiff's] claim." *Colon*, 58 F.3d at 874.

Under these circumstances, where Plaintiff's allegations fail to establish personal involvement of supervisory defendant Perez and to provide particular relevant deficiencies in the training program, Plaintiff's failure to train claim against Perez will be dismissed. However, the dismissal will be without prejudice to Plaintiff filing an amended claim against Perez should he possess sufficient facts to do so.

### 2. Failure to Train as to City of Bridgeport

Plaintiff's three paragraphs alleging failure to train by the City of Bridgeport are identical to those allegations against Perez, appearing at paragraphs 32 to 34 of the Complaint [Doc. 1]. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a

failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  To proceed on a deliberate-indifference theory, a plaintiff must first establish that the need for more or better supervision to protect against constitutional violations was "obvious." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 128 (2d Cir. 2004) (quoting *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995)). This "obvious need may be demonstrated through," for example, "proof of repeated complaints of civil rights violations." *Vann*, 72 F.3d at 1049. *See also Outlaw v. City of Hartford*, 884 F.3d 351, 373 (2d Cir. 2018) (same). Thus, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62 (quoting *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown,* 520 U.S. 397, 409 (1997)).  *See also Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 539-41 (S.D.N.Y. Sept. 26, 2012) (dismissing failure to train claim where the Plaintiff provided no facts regarding a pattern of similar alleged violations).

Finally, inherent in the principle that "a municipality can be liable under § 1983 only where its policies are the 'moving force [behind] the constitutional violation,'" *Canton*, 489 U.S. at 389 (quoting *Monell*, 436 U.S. at 694), is the concept that the plaintiff must show "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation,'" *Outlaw*, 884 F.3d at 373 (quoting *Canton*, 489 U.S. at 385).  *See also Cash v. Cty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011) ("In short, to establish municipal liability under § 1983, a plaintiff must prove that 'action pursuant to official municipal policy' caused the alleged constitutional injury."). Therefore, to find municipal liability on a failure to train theory, "a municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Doe by & through Boyd v. Smereczynsky*, No.

3:16-CV-394(MPS), 2017 WL 1100426, at *4 (D. Conn. Mar. 23, 2017) (quoting *Connick*, 563 U.S. at 61).

In the case at bar, Plaintiff has alleged no facts to demonstrate a "pattern of similar constitutional violations by untrained employees." *Connick*, 563 U.S. at 62. Nor has Plaintiff specified particular flaws in the City's training program, much less the relevant respect in which the City failed to train the officers, resulting in this particular alleged constitutional violation. "While it may be true that § 1983 plaintiffs cannot be expected to know the details of a municipality's training programs prior to discovery, . . . this does not relieve them of their obligation under *Iqb*al to plead a facially plausible claim." *Simms v. City of New York*, 480 F. App'x 627, 631 n.4 (2d Cir. 2012). As in *Triano*, Plaintiff Boyd has failed to allege "any facts suggesting that an alleged training deficiency caused his constitutional injury, for example by identifying 'procedural manuals or training guides' or by 'highlight[ing] relevant particular aspects of police training or supervision.'" 895 F. Supp. 2d at 540 (citation omitted). "After *Twombly* and *Iqbal*, the Second Circuit has made clear that Plaintiff must do more than merely state that the municipality's failure to train caused his constitutional injury." *Id.*

Because Plaintiff has simply made conclusory allegations that the City failed to adequately train Larregui, Plaintiff's "failure to train" claim against the City of Bridgeport is insufficient. The Court will dismiss it, without prejudice, for failure to state a claim.

### 2. *Punitive Damages against the City of Bridgeport*

Defendants' final argument in their motion to dismiss is that "[p]unitive damages are not available against the City of Bridgeport because municipalities are not subject to punitive damages under federal law." Doc. 14, at 5. As Defendants assert, the United States Supreme Court has held

that "a municipality is immune from punitive damages under 42 U.S.C. § 1983." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).

The Court concurs with Defendants' argument, finding it sound. Moreover, there are no facts in the present case to suggest that the "seemingly narrow exception" to the prohibition against punitive damages, allegedly "carved out by footnote 29" of *Newport*, applies. *Ciraolo v. City of New York*, 216 F.3d 236, 242 (2d Cir. 2000). That exception applies in the rare case or "extreme situation where the taxpayers are directly responsible for perpetrating an outrageous abuse of constitutional rights." *Newport*, 453 U.S. at 267 n.29. This Circuit has generally refused to apply that narrow exception, and has thus held punitive damages unavailable against a city in a § 1983 case based on municipal officials' policy in the absence of the electorate's express approval of that policy. *Ciraolo,* 216 F.3d at 242. Accordingly, Plaintiff's request for punitive damages against the City will be dismissed.

The Court notes that to the extent that Plaintiff's sole claim for failure to train against the City of Bridgeport will be dismissed, there are no allegations remaining in the Complaint upon which damages, including punitive damages, may be awarded against the City. Nonetheless, in light of the Court's decision to dismiss that claim without prejudice, the Court advises that "punitive damages" will also not be recoverable against the City in the event the claim is adequately repled. The Court will thus strike the Plaintiff's request for "punitive damages" against the City from the Complaint, along with Plaintiff's "failure to train" claim against the City.

### III. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss [Doc. 13] is GRANTED. Plaintiff's claims for failure to train are hereby DISMISSED against defendants Chief of Police

Armando Perez and the City of Bridgeport. These claims are dismissed *without prejudice* to the Plaintiff filing an amended complaint, in compliance with the terms described below.

Additionally, Plaintiff's request for punitive damages against the City of Bridgeport is stricken from the Complaint because a municipality is immune from punitive damages under 42 U.S.C. § 1983.

Pursuant to Local Civil Rule 26(f)(1), within thirty days following entry of this Ruling – on or before **October 30, 2020** – the parties are directed to "confer for the purposes described in Fed. R. Civ. P. 26(f)." D. Conn. L. Civ. R. 26(f)(1). Within fourteen days following that conference, they "shall jointly complete and file a report in the form prescribed by Form 26(f), which appears in the Appendix to [the Local] Rules." *Id.* "After the parties' report is filed, the Court will issue a written scheduling order pursuant to Fed. R. Civ. P. 16(b)." *Id.* 26(f)(2).

In addition, the dismissal of the failure to train claims is WITHOUT PREJUDICE to repleading if Plaintiff possesses and is able to plead sufficient facts to do so. Plaintiff may file a motion to amend, with a proposed amended complaint, in compliance with Federal Rule of Civil Procedure 15(a). Moreover, because he is represented by counsel, his motion to amend, if any, must "be accompanied by both a redlined version of the proposed amended pleading showing the changes proposed against the current pleading and a clean version of the proposed amended pleading." D. Conn. L. Civ. R. 7(f). The deadline for Plaintiff to file a motion to amend, if so advised, is on or before **October 30, 2020.**

It is SO ORDERED.

Dated: New Haven, Connecticut
    September 30, 2020                    */s/Charles S. Haight, Jr.*
                                          CHARLES S. HAIGHT, JR.
                                          Senior United States District Judge